**Lillian STULL, Plaintiff,**

v.

**Charles W. POOL et al., Defendants.**

**No. 72 Civ. 2055.**

United States District Court,
S. D. New York.

April 30, 1974.

Stull & Stull, New York City, for plaintiff.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants, Charles W. Pool, Walter C. Jamouneau, R. K. Griffin, Howard Piper, William T. Piper, Jr., and William T. Piper, Jr. and Howard Piper as Executors of the Estate of William T. Piper, Deceased.

Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for defendant, Bangor Punta Corp.

## OPINION AND ORDER

OWEN, District Judge.

I assume, without deciding, that this action is an appropriate one for class treatment, arising as it does from the contest between Chris-Craft Industries, Inc. and Bangor Punta Corporation for control of Piper Aircraft Corporation in 1969. There the Court of Appeals found that in the context of a tender offer by Chris-Craft, letters sent by the Piper family which managed Piper Aircraft to shareholders to induce them to reject the offer, contained material misstatements and omissions. Chris-Craft Industries, Inc. v. Bangor Punta Corporation, 480 F.2d 341 (2d Cir. 1973).

Plaintiff, on January 23, 1969, was the owner of 150 shares of the common (voting) stock of Piper Aircraft. On that date Chris-Craft, seeking to control Piper, made a tender offer to the public stockholders of Piper soliciting the purchase of 300,000 shares of Piper common stock at $65 per share. Chris-Craft's initial and subsequent efforts into August 1969 [1] to obtain control met strong resistance from Piper which considered Chris-Craft to be a corporate raider. Piper thereupon sought to block Chris-Craft's attempted takeover and, by the dissemination of a press release and letters, to convey to its shareholders its opinion that Chris-Craft's tender offers were not in their best interests.

It is the plaintiff's position that the facts thus communicated to her and other present and former shareholders by management were false and misleading and that she and they were damaged in that they were deprived of the ability to make an informed judgment on whether or not to sell their shares to Chris-Craft, which plaintiff claims all might have done had they been properly informed.

Plaintiff asserts that the class she desires to represent would include "the public stockholders of Piper Aircraft Corporation common shares who were deprived of tender offers made to them by Chris-Craft on or about and between January 23, 1969 and August 4, 1969." [2]

1. Chris-Craft later offered a package valued by First Boston Corporation at $70–74 a share, and still later increased the package by $10 in cash.

2. Defendants contend that there is no class that can be so defined. They point out that there are at least three different courses stockholders followed during this period:

However, I need not reach a determination of the "class" herein, for, however defined, I conclude that under Fed.R. Civ.P. 23(a)(4), plaintiff is not an appropriate representative of any class.

The threshold fact which compels disqualification is that the plaintiff, Lillian Stull, is the wife of Richard Stull, a member of the firm of Stull and Stull, who is her personal attorney in this litigation and who, with his firm, would represent her and others of the class, were it to be declared. The potential conflict of interest inherent in this situation is obvious. To paraphrase an observation of this Court in Cotchett v. Avis, 56 F.R.D. 549 (S.D. N.Y.1972), the difficulty I have with this situation lies in the fact that the possible recovery of Mrs. Stull as a member of the class is far exceeded by the financial interest she and her husband, as a marital unit, might have in the legal fees engendered by this lawsuit. A number of recent decisions accord with this view. See Shields v. First National Bank, 56 F.R.D. 442 (D. Ariz.1972); Kriger v. European Health Spa, Inc., 56 F.R.D. 104 (E.D.Wisc. 1972); and Graybeal v. American Savings & Loan Assn., 59 F.R.D. 7 (D.D.C. 1973), where the Court stated at pp. 13–14:

> . . . In any class action there is always the temptation for the attorney for the class to recommend settlement on terms less favorable to his clients because a large fee is part of the bargain. The impropriety of such a position is increased where, as here, the attorney is also the representative who brought the action on behalf of

the class, and where, as here, the potential recoveries by individual members, including representatives, of the class are likely to be very small in proportion to the total amount of recovery by the class as a whole. Thus Plaintiffs may stand to gain little as class representatives, but may gain very much as attorneys for the class.

Also appropriate here is the recent observation of the Court of Appeals for this Circuit in Alpine Pharmacy Inc. v. Chas. Pfizer & Co. Inc., 481 F.2d 1045 (2 Cir. 1973) declaring that an attorney in a class action "serves in something of a position of public trust."

Given this, the clear inherent conflict renders plaintiff an inappropriate representative of potential class members whose interests must be protected under Rule 23(a)(4).

Further, the plaintiff has rendered herself vulnerable to embarrassing cross-examination in this action by reason of contradictory statements made under oath in pleadings in Stull v. Green, 69 Civ. 440, instituted by her in this Court asserting derivative claims on behalf of Piper arising from the same Chris-Craft contest for control.[3]

Thus, whereas, in this action plaintiff asserts that the Chris-Craft tender offer of $65 per share was a "fair price" for the Piper shares which she was wrongfully induced not to consider, in the first complaint in Stull v. Green, personally verified February 3, 1969, she alleges that the $65 was less than the "fair" value (par. 13) and constituted a "raid" on Piper (par. 8). In Stull v. Green's fourth complaint, personally verified May 29, 1969, plaintiff, again referring

---

some (including plaintiff) rejected both the Chris-Craft offer and a competing Bangor Punta offer and still hold their shares, some accepted the Bangor Punta offer and sold to it, and some rejected both offers and subsequently sold on the open market.

3. Defendants assert that the conflict in this situation further mandates disqualification of

Mrs. Stull as a class representative. Ruggiero v. American Bioculture, Inc., 56 F.R.D. 93 (S.D.N.Y.1972); Hawk Industries, Inc. v. Bausch & Lomb, Inc., 59 F.R.D. 619 (S.D. N.Y.1973). This would seem to be a valid position, but I do not reach this question.

to the $65 Chris-Craft tender offer, alleges that the true value of Piper shares was in excess of $100 (par. 9) and that Chris-Craft's $65 offer was "grossly and unconscionably inadequate." (pars. 8, 37). These scathing assertions tarnish plaintiff's present ability to be the representative of all stockholders who were allegedly induced by defendant's material misstatements and omissions *not* to accept the $65 offer.[4]

Given the foregoing, the plaintiff's motion for a determination that her action be maintained as a class action is denied.

So ordered.

4. This is particularly so here where plaintiff demanded a jury. Plaintiff, becoming aware of this on oral argument, thereafter unsuccessfully endeavored to waive a jury.