Yacob ABOUDI, Plaintiff,

v.

Michael DAROFF et al., Defendants.

No. 72 Civ. 1118.

United States District Court,
S. D. New York.

Dec. 31, 1974.

Allan K. Peckel, Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff.

Lawrence E. Brinn, New York City, for defendants, Michael Daroff, Joseph A. Daroff, Mitchell N. Daroff, Henry C. Schwartz and Carlton H. Rosin.

Laura Banfield, White & Case, New York City, for defendants, Louis Stein, Samuel J. Holtzman, Donald R. Belcher and Clarence E. Hafford.

Stephen Rackow Kaye, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant S. D. Leidesdorf & Co.

## OPINION

PIERCE, District Judge.

Plaintiff Yacob Aboudi has brought this action charging various defendants in a single count with violations of the federal securities laws, specifically Section 10(b) of the 1934 Exchange Act and Rule 10b–5 thereunder. The defendants are Botany Industries, Inc. [Botany],[1] certain individuals who served as its officers and directors during the period at issue [the individual defendants],[2] and S. D. Leidesdorf & Co. [Leidesdorf], auditors for Botany. Plaintiff alleges that during the period between December 10, 1969 and March 14, 1972 the defendants were responsible for issuing and disseminating certain financial statements and reports which falsely represented Botany's financial position and future prospects.[3] It is alleged that these actions falsely inflated the market prices and apparent value of Botany's securities during this period and that as a result Botany stock was sold to the public at artificially inflated prices to the damage of plaintiff and those he seeks to represent.

Plaintiff Aboudi is alleged to have purchased 100 shares of Botany common stock on the American Stock Exchange, on or about March 9, 1971, at the then prevailing market price of $9.125 per share. This case is presently

---

1. Defendant Botany has been in reorganization under Chapter XI of the Bankruptcy Laws for as long as this action has' been pending.' It has not appeared or answered in this action.

2. The individual defendants are Michael Daroff, Joseph A. Daroff, Mitchell N. Daroff, Henry C. Schwartz, Louis Stein, Samuel J. Holtzman, Donald R. Belcher, Clarence E. Hafford, Robert Todd Lang, and Carlton H. Rosin. Defendant Lang has not appeared or answered in this action.

3. The statements and reports upon which plaintiff relies are the quarterly reports for the periods ending October 31, 1969, January 31, 1970, April 30, 1970, October 31, 1970, January 31, 1971, April 30, 1971, October 31, 1971 and the annual reports for the years ending July 31, 1970 and July 31, 1971. Misleading information was allegedly disseminated through press releases, summaries of which allegedly appeared in the Wall Street Journal on December 10, 1969, March 18, 1970, June 12, 1970, December 4, 1970, December 15, 1970, March 16, 1971, June 17, 1971, November 11, 1971, and March 14, 1972 and through statements of Michael Daroff reported in the February 20, 1971 issue of Business Week.

before the Court for consideration of plaintiff's motion for an order declaring that the suit may be maintained as a class action on behalf of those persons who suffered loss or damage by reason of having purchased Botany common stock during the period from December 10, 1969 through March 14, 1972.

To be allowed to maintain an action on behalf of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a plaintiff must meet the four requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).[4] These requirements, as they relate to the present action, will be considered seriatim.

*Rule 23(a)(1).* Plaintiff estimates that the number of purchasers during the proposed class period is between 5,000 and 7,500 persons. The estimate is based on the fact that the trading volume of Botany's common stock during the period, as reported by Standard and Poors American Stock Exchange index, was approximately 1,500,000 shares and the assumption that the average trade involved 200 to 300 shares. The accuracy of this estimate has not been disputed. Considerably smaller classes have been found to meet the test of numerosity. See, e. g., Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972); Wolfson v. Solomon, 54 F.R.D. 584, 591

(S.D.N.Y.1972). The Court finds adequate basis for a conclusion that the proposed class of persons is so numerous that joinder of all members would be impractical.

*Rule 23(a)(2).* Many of defendants' threshold objections to the adequacy of plaintiff's showing that there are common questions of law and fact have been obviated by the filing of an amended complaint, January 4, 1974. In the amended complaint, plaintiff specifically identifies those documents and statements which he alleges portrayed a falsely favorable and optimistic picture of Botany's financial condition and prospects.[5]

Defendants' primary argument is that because of the number of different documents and events plaintiff has relied on to establish the alleged misconduct, there are not questions of law or fact common to all members of the class. However, the fact that plaintiff has not chosen to rely on a single misrepresentation or on a single document containing several misrepresentations cannot serve to defeat his class action claim. See Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966). Where, as here, it is alleged that a series of reports and statements containing interrelated and cumulative misleading data were issued to the investing public,

---

4. Rules 23(a) and (b)(3) provide:
   (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   \*     \*     \*     \*     \*
   (3) the court finds that the questions of law or fact common to the members of

the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

5. See note 3 supra.

a course of conduct is presented which raises questions common to all those who purchased during the period when the data was being disseminated. See Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964); Fischer v. Kletz, *supra*; Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966). These questions include the issues of whether during the period at issue Botany's reported earnings were overstated and its financial condition misrepresented and whether the market price of Botany's common stock was inflated as a result of the actions charged.

The Court finds the requirement of Rule 23(a)(2) has been satisfied.

■ *Rule 23(a)(3)*. Defendants assert that plaintiff's claim cannot be typical of the claims of the class, as required by this subsection, because during the period from December 10, 1969 to March 14, 1972 the market price of Botany stock fluctuated considerably. Defendant Leidesdorf has identified what it claims are four distinct periods of market activity: a declining market, an indecisive market, a rising market, and another declining market.[6] All defendants claim that Aboudi, who purchased during the third period when the price of the stock was at its peak, cannot assert claims which are typical of those who purchased during the indecisive or declining markets when *a fortiori* the circumstances must have been substantially different.

While this argument has an initial appeal, it contains a fundamental flaw. The course of action of the stock is not equivalent to the course of action of the defendants. It is the latter which is important in determining this class action motion. Plaintiff's claim is that the reports and statements of defendants throughout the entire period were false and misleading, that these reports and statements were related to one another, and that as a result of these related actions, the market price of Botany's stock was inflated above its true value at every point throughout the period, regardless of what that price happened to be or in which direction it happened to be moving at any particular time. To properly plead such a course of conduct, plaintiff need not show any relationship between the alleged misstatements of any one time period and the market activity of another. Viewed in terms of the alleged common and continuous scheme and activity of the defendants, it is clear to the Court that plaintiff's claims are typical of those of the proposed class.

The decisions relied on by defendants in support of the contrary conclusion are distinguishable. In Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967), plaintiffs in five separate actions sought to represent persons who purchased the stock of defendant Georgia-Pacific during a period extending from February 1963 through March 1965 or April 1966. There, however, the Court found that in reality the claims were brought on behalf of persons who had purchased within or near one of four distinct one or two-month time periods during which

---

6. Defendant Leidesdorf has submitted evidence to show that:

(1) Between December 10, 1969 and August 20, 1970 the closing price of Botany shares fell from approximately $10.00 per share to less than $4.00 per share;

(2) Between August 20, 1970 (when the closing price was $3.875) and January 12, 1971 (when the closing price was $4.625) the closing price of Botany shares fluctuated indecisively between $3.875 and $6.00 per share;

(3) Between January 12, 1971 and March 10, 1971, the closing price of Botany shares rose from approximately $4.625 per share to $9.125 per share;

(4) After March 10, 1971, the price of Botany shares fell and the closing price of Botany shares on March 14, 1972 was $3.125 per share.

price manipulation was alleged to have occurred. See *id.* at 150–151. The plaintiffs had not pleaded one manipulation throughout the period. See *id.* at 153. Further, it is particularly significant that in dividing the proposed class into different periods the Court focused on the conduct of the defendants. It found that, "[t]he complete and separate identity of the four manipulative periods is thoroughly demonstrated by the fact that the four periods are distinctly related to four separate acquisitions accomplished by the defendants." *Id.* at 154.

In Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), the Court stated that a "few isolated examples of 'seller's puff' " by individuals while official reports portrayed a more realistic picture of the company's future would not suffice to establish a common course of conduct. See *id.* at 489–490. Aboudi's complaint does not rest on such charges, however.

Finally, defendants rely on Robinson v. Penn Central Co., 58 F.R.D. 436 (S.D.N.Y.1973). There the Court found there could be serious doubt as to the typicality of plaintiff's claim to represent a class of all those who purchased shares of Penn Central stock during a given period because,

> "[P]urchasers who bought stock at the beginning of the period would have an interest in maximizing the significance of events that preceded their purchases, while at the same time minimizing the significance of events that followed their purchases. Purchasers who bought late in the period, on the other hand, would have an interest in minimizing the significance of earlier events in order to maximize the materiality of later events. Plaintiff Newton's posture * * * could be untypical and even antagonistic to those proposed class members whose transactions occurred later in the period." *Id.* at 443.

Defendants' reliance on the quoted passage is misplaced. When Judge Las-

ker made this finding, he was specifically considering the plaintiffs' claim without regard to the conspiracy allegations in the complaint. See *id.* at 442. He noted that a report of the House Committee on Banking and Currency had specifically enumerated a number of public and non-public events believed to be significant by the SEC which had occurred during the period and affected trading in Penn Central common stock. See *id.* at 443. Considered apart from any allegations of a common course of conduct, there was nothing in the plaintiffs' charges to tie these events together. It is precisely these allegations which serve to make the plaintiff's claim here typical.

The Court finds the requirement of Rule 23(a)(3) has been satisfied.

■ *Rule 23(a)(4).* There is no contention here that, the other Rule 23 requisites being satisfied, plaintiff will not fairly and adequately protect the interests of the class. The Court finds no basis for concluding that this requirement has not also been met. It is settled that even a single plaintiff may represent a class. See Green v. Wolf Corp., *supra* 406 F.2d at 298. Plaintiff Aboudi has a real and personally significant stake in the outcome of the litigation which is in no way antagonistic to the interests of other purported class members. Moreover, the credentials of plaintiff's counsel and their performance thus far leave the Court with no doubt that plaintiff's cause will be satisfactorily presented throughout the course of this litigation. The essential ingredients of adequate representation, see Dolgow v. Anderson, *supra* 43 F.R.D. at 494, are thus demonstrably present in the instant case.

*Rule 23(b)(3).* While all class actions must *contain* common questions of law and fact, see Rule 23(a)(2), the common questions must be found to *predominate* over individual questions in those actions brought under subsection (b)(3). Defendants contend that since plaintiff

has alleged active misstatement rather than omission, the market theory of reliance will not be available, individual reliance on particular misstatements must be shown, and the particular facts of each plaintiff's purchase, including the time, price, and documents relied on, will be of predominate importance.

This argument can be answered without determining at this time what role the issue of reliance will ultimately play in the disposition of this suit. Even if it eventually appears that individual reliance must be shown, the Court cannot say at this time that such individual questions will outweigh the significant common questions which have been raised concerning the existence and materiality of the alleged misrepresentations. See Korn v. Franchard Corp., *supra* 456 F.2d at 1212. Should it later appear that reliance or any other individual issue takes on considerable significance in this action, the Court may, if necessary, alter or amend its present order, pursuant to Rule 23(c)(1), before a decision on the merits.

It is also apparent that a class action is superior to other methods for adjudication of this controversy. Class actions have been deemed particularly appropriate where, as here, "a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." Green v. Wolf Corp., *supra* 406 F.2d at 296. See Dolgow v. Anderson, *supra* 43 F.R.D. at 484–485.

The Court anticipates no unusual difficulties which would make a class action unmanageable in this case. The Court finds, therefore, that the requirements of Rule 23(b)(3) have been met.

Two final and related objections to the entry of a class order at this time must be addressed. First is the claim, raised by all the defendants in some fashion, that there should be no class determination at all until defendants have had discovery on the class action issues. Defendants rely principally on Robinson v. Penn Central Co., *supra*, to support this position. The situation addressed by that decision is, however, entirely different from the one before this Court.

In *Robinson*, the plaintiffs had charged a series of New York banks, brokerage houses, and financial institutions with a conspiracy in violation of Section 10(b) of the 1934 Act and Rule 10b–5, effected by selling Penn Central shares while in possession of inside information about the company's impending bankruptcy. See *id.* 58 F.R.D. at 439. The Court found that discovery would be necessary before a class could be determined because in their complaint plaintiffs had presented nothing more than conclusory allegations to support their charges of conspiracy, concert, and aiding and abetting. See *id.* 58 F.R.D. at 442. Further, the plaintiffs had failed to make clear not only the facts on which they purported to rely, but even a theory of the case which demonstrated a common predicate of liability. See *id.* 58 F.R.D. at 444. As discussed, *supra*, the Court found serious issues as to the typicality of the plaintiffs' allegations when considered without the conspiracy charges.

In sharp contrast, plaintiff Aboudi has alleged a clear theory of liability—a course of conduct consisting of numerous interrelated misrepresentations and embracing all defendants—and has specifically identified the individual actions allegedly comprising the course of conduct. The Court finds no reason to delay the entry of a class order while discovery proceeds on the general class issues.

The second objection is raised by defendant Leidesdorf. Leidesdorf argues that, in any event, no class should be allowed to proceed against it which includes persons who purchased before December 4, 1970, the date on which the first figures certified by Lei-

desdorf were made public. Plaintiff argues, in favor of allowing the entire proposed class to proceed against Leidesdorf, that even though no figures certified by that defendant were made public before December 4, 1970, questions arise as to when it was first discovered that the earnings for fiscal year 1970 were overstated and what should be the extent of liability of one who joins a conspiracy in progress. These are indeed important questions. But they are unanswered. The Court concludes that without more information concerning these questions, which go to the theory supporting Leidesdorf's liability to purchasers before December 4, 1970 and the facts supporting that liability, it would be unwise to enter an order allowing a class including such purchasers to proceed against defendant Leidesdorf. Cf. Robinson v. Penn Central Co., *supra*. This determination does not rule out a later enlargement of the class with respect to Leidesdorf should discovery show such action to be warranted.

In summary, it is hereby determined that as against all defendants except S. D. Leidesdorf & Co., this action may be maintained as a class action under Rule 23(b)(3) on behalf of all those persons who purchased common stock of Botany Industries, Inc. during the period December 10, 1969 and March 14, 1972 and who suffered loss or damage by reason thereof. As to defendant Leidesdorf, this action may be maintained on behalf of a subclass consisting of all those persons who purchased common stock of Botany Industries, Inc. during the period between December 4, 1970 and March 14, 1972 and who suffered loss or damage by reason thereof.

The plaintiff is directed to submit a proposed order on notice, incorporating a form of notice to the class in accordance with the requirements of Rule 23(c)(2).

So ordered.