**Joseph J. BYRNES et al., Plaintiffs,**

**v.**

**IDS REALTY TRUST, a Real Estate Investment Trust, et al., Defendants.**

**Nos. 4–75 Civil 223, 4–75 Civil 244.**

United States District Court,
D. Minnesota,
Fourth Division.

March 4, 1976.

---

James J. Schumacher, Minneapolis, Minn., Marshall B. Grossman, Los Angeles, Cal., for plaintiffs.

Miles E. Efron, Minneapolis, Minn., for Goldfarb.

Joe A. Walters, Minneapolis, Minn., for IDS Realty Trust.

Edward J. Schwartzbauer, Minneapolis, Minn., for other defendants.

Edward J. Callahan, Minneapolis, Minn., for Peat, Marwick, Mitchell & Co.

## MEMORANDUM AND ORDER

MILES W. LORD, District Judge.

Before the Court is a motion by the plaintiffs to certify this litigation as a class action pursuant to Rule 23 F.R.Civ.P.

The plaintiffs and the class they propose to represent are persons who purchased shares in the defendant IDS Realty Trust. Initially, the plaintiff Byrnes brought a separate action on behalf of himself and others similarly situated (4–75 Civ. 223) as did the plaintiff Goldfarb (4–75 Civ. 244). By agreement among the parties, the cases were consolidated. In the unified and consolidated class action complaint now before the Court, the plaintiffs allege that the defendants disseminated false and misleading information regarding the financial condition of IDS Realty Trust during the period August 16, 1974 through April 15, 1975, in order to artificially maintain the price at which the Trust's shares were trading, in violation of the federal securities acts,[1] Minnesota Securities Act,[2] and common law.

The defendant IDS Realty Trust (Trust) is a publicly held real estate investment trust (REIT) organized to invest in a portfolio of real property investments. The Trust's investments consist primarily of short-term mortgage loans for construction, land acquisition and land development purposes, and, to a lesser extent, real estate equity investments. The defendant IDS Mortgage Corporation is the Trust Advisor and is a wholly owned subsidiary of the

defendant Investor's Diversified Services, Inc. (IDS). The individual defendants are the directors and officers of the Trust Advisor, IDS Mortgage Corporation, and the Trustees of the Trust, IDS Realty Trust. The defendant Peat, Marwick & Mitchell is the Trust's accountant. The activities of the Trust are essentially controlled by the Trust Advisor (IDS Mortgage Corporation) which in turn is controlled by the parent (IDS). The Trust Advisor receives fees for managing the Trust's assets which are passed through to the parent and become part of its overall earnings.

The specific factual claims of the plaintiffs are as follows. In a press release dated August 16, 1974, the Trust announced earnings of $3,799,000 or $1.58 per share for the second quarter ending July 31, 1974.[3] Earnings for the nine month period ending October 31, 1974 were reported at 5.7 million dollars or $2.36 per share and the yearly earnings for the fiscal year ending January 31, 1975 were reported at 7.2 million dollars or $2.99 per share. After the close of trading on April 15, 1975, the Trust announced a revision in the earnings previously reported for the year ending January 31, 1975 stating that instead of a profit the earnings for that period would reflect either a break even position or a loss. The stock closed that day at $11.25 a share. When trading reopened two days later the stock fell to $5.25 a share. On May 1, 1975 the Trust issued a press release which stated that for the year ending January 31, 1975 the Trust sustained a loss of 5.1 million dollars or a loss of $2.12 per share. This revised report contrasted with the 7.2 million dollar profit which had previously been reported.

Further, on February 14, 1975, when the Trust originally reported its earnings for the period ending January 31, 1975, the Trust announced that its allowance for loan losses for the period ending January 31,

---

**1.** § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5; § 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a); § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

**2.** Minnesota Statutes, §§ 80A.01, 80A.03, 80A.23 (1973 Supp.).

**3.** The Trust's fiscal year ends on January 31.

1975 was 3.9 million dollars. However, in its press release of May 1, 1975, the Trust revised that figure stating that the allowance for loan losses was actually 16.7 million dollars. Finally, on February 14, 1975 the Trust announced that the total of trust investments which were non-earning[4] amounted to 29.6 million dollars or 8% of invested assets. On May 1, 1975 the Trust again revised this figure stating that the total in non-earning assets was 92 million dollars or 26% of invested assets.

In order to prevail upon their motion, the plaintiffs have the burden of satisfying the four subdivisions of Rule 23(a) and one of the subdivisions of Rule 23(b). The defendants do not dispute that the plaintiffs have satisfied the prerequisites contained in Rule 23(a)(1) and (a)(2), and the Court specifically finds that the requirements of those subdivisions have been met. Rather, the defendants argue that the plaintiffs have failed to meet the requirements of Rule 23(a)(3), (a)(4) and Rule 23(b)(3). For reasons which will be outlined subsequently, it is the Court's conclusion that this litigation is properly certifiable as a class action. However, in discussing the merits of the plaintiffs' motion, the Court will consider only those portions of the rule which the defendants contend the plaintiffs have failed to comply with.

At the outset it should be noted that the plaintiffs have defined the class as consisting of those persons who purchased shares of the Trust during the period August 16, 1974 to April 15, 1975 and suffered a loss. Since all of the representative parties purchased their shares during this time period[5] and since the relevant public statements made by the defendants also occurred during this period, this definition would appear to be satisfactory. Therefore, in determining the propriety of the plaintiffs maintaining a class action, the Court will utilize this definition.

The first argument of the defendants relates to the plaintiffs' compliance with Rule 23(a)(3). Rule 23(a)(3) provides that in order for a class action to be proper, the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The defendants argue that the claims of the representative parties are not typical of the class insofar as the alleged misleading press releases were issued on four separate occasions and therefore constitute four distinct time periods. Since none of the representative parties purchased in each of the four time periods, the defendants contend that no single plaintiff is similarly situated with respect to all purported class members.

This argument, however, is unduly restrictive of the typicality required under Rule 23(a)(3). Rule 23(a)(3) does not require that the claims of the representative parties and the remaining members of the class be identical. The crucial inquiry is whether the potential conflict of interest is minimal and outweighed by the existence of substantial questions common to all members of the class. Numerous courts have held that the requirements of Rule 23(a)(3) are satisfied when a course of similar conduct exists on the part of the defendants which presents substantial questions common to all members of the class notwithstanding the existence of some conflict of interest. *See Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.*, 406 F.2d 291 (2nd Cir. 1968); *Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468 (S.D. N.Y.1975); *In re U. S. Financial Securities Litigation*, 64 F.R.D. 443 (S.D.Cal.1974); *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.

---

4. Non-earning assets are those assets of the Trust which are no longer accruing income; e. g., bank has $10,000 mortgage on a $30,000 home. The homeowner loses his job and can't make his house payments. Bank can collect its $10,000 from equity in house but they aren't collecting any interest. They have a non-earning asset. *See,* Hearing re Class Action Certification, November 17, 1975, Tr. at 51–52.

5. Joseph Byrnes purchased 500 shares of the Trust on September 5, 1974; Roy A. Laszewski purchased 500 shares of the Trust on January 7, 1975 and another 500 on January 14, 1975; Stephen Goldfarb purchased 500 shares of the Trust on February 26, 1975.

1974); *In re Memorex Security Cases*, 61 F.R.D. 88 (N.D.Cal.1973); *Siegel v. Realty Equities Corporation of New York*, 54 F.R.D. 420 (S.D.N.Y.1972); *Doglow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968); *Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42 (S.D.N.Y.1966). With facts very similar to those presented here, the Court in *Aboudi v. Daroff, supra*, concluded that the claims of the representative parties were typical of the claims of the class:

> Defendant Leidesdorf has identified what it claims are four distinct periods of market activity . . . . . All defendants claim that Aboudi who purchased during the third period when the price of the stock was at its peak, cannot assert claims which are typical of those who purchased during the indecisive or declining markets when *a fortiori* the circumstances must have been substantially different. While this argument has an initial appeal, it contains a fundamental flaw. The course of action of the stock is not equivalent to the course of action of the defendants. It is the latter which is important in determining this class action motion. Plaintiff's claim is that the reports and statements of defendants throughout the entire period were false and misleading that these reports and statements were related to one another, and that as a result of these related actions, the market price of Botany's stock was inflated above its true value at every point throughout the period, regardless of what that price happened to be or in what direction it happened to be moving at any particular time. To properly plead such a course of conduct, plaintiff need not show any relationship between the alleged misstatements of any one time period and the market activity of another. Viewed in terms of the alleged common and continuous scheme and activity of the defendants, it is clear to the Court that plaintiff's claims are typical of those of the proposed class. 65 F.R.D. at 391.

Like the plaintiff in *Aboudi v. Daroff, supra*, the plaintiffs in the present action have alleged that the defendants issued a series of misleading and related statements in an effort to inflate the market price of the Trust's shares. Thus, the fact that the representative plaintiffs purchased in different time periods than some members of the class does not make their claims atypical. For purposes of Rule 23, the alleged common course of fraudulent conduct on the part of the defendants presents claims which are typical of the entire class. Furthermore, if it should develop that substantial conflicts exist, subclasses could be created pursuant to Rule 23(c)(4).

The principal case relied upon by the defendants in support of their argument that the claims of the representative parties are not typical of those of the class is distinguishable. In *Reichert v. Bio-Medicus, Inc.*, 4–73 Civ. 457 (D.Minn. July 31, 1974) (*Reichert*), Judge Larson specifically noted that the representations made by the defendants to each plaintiff were neither similar nor made pursuant to a common scheme. *Reichert* at 5. The Court stated: "In sum, both of these cases involve different representations made by different individuals to different purchasers at different times and under different circumstances." *Id.* at 6.

The second argument advanced by the defendants is that the common questions of fact do not predominate and that a class action is not the superior method for the adjudication of this controversy. Both of these contentions are requirements of Rule 23(b)(3).

The defendants argue that because the plaintiffs' cause of action is based upon alleged misleading statements which were separate and made at different times, the common questions of fact do not predominate over the individual questions. This is essentially the same argument advanced by the defendants with respect to the issue of typicality. However, as noted in the discussion regarding typicality, the principal question to be determined is whether the defendants' conduct establishes a common scheme to defraud. Where, " 'a common nucleus' within the several misrepresenta-

tions can be discerned, the requisite showings of typicality and predominance of common issues can be made." *In re Memorex Security Cases, supra,* 61 F.R.D. at 96.

■ Viewing the defendants' argument in light of this standard, it is clear that the alleged misrepresentations of the defendants create a common nucleus of facts. The primary issue in this action is whether the statements by the defendants caused the market price of the Trust's shares to rise so as to encourage investment. The press releases issued by the defendants overstated earnings, loan losses, and non-earnings assets. As such, they present a nucleus of facts necessarily common to all members of the class, and, because of the interrelatedness of the statements and their effect on the Trust's profits, the common questions predominate over any individual questions which may arise. *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909 (9th Cir. 1964); *Green v. Wolf, supra; Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968); *Berland v. Mack,* 48 F.R.D. 121 (S.D.N.Y.1969); *Herbst v. Able,* 47 F.R.D. 11 (S.D.N.Y.1969); *Doglow v. Anderson, supra; Kronenberg v. Hotel Governor Clinton, Inc., supra.*

Similarly, because of the presence of these common issues, a class action is the most efficient way to redress any damage the plaintiffs may have suffered. Allowing this case to proceed as a class action is far superior to the maintenance of separate actions.[6] Moreover, the management of the class claims does not appear to present any problems. Any problems which may arise can easily be resolved by the flexible provisions of Rule 23.

The defendants' last argument relates to the adequacy of the plaintiffs representation. Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class.

■ The defendants contend that the plaintiff Byrnes does not adequately represent the class in that he did not purchase his shares in the Trust until September 5, 1974, four days after the first alleged misleading statement was issued. However, the defendants have misread the plaintiffs' complaint. September 9, 1974 was the date that the second quarter earnings were officially communicated to the shareholders. Earlier, on August 16, 1974, the Trust released the second quarter earnings in a public press release.[7] Therefore, Byrnes is clearly a member of the class.

■ The defendants further contend that the attorneys for the plaintiffs cannot adequately represent the class since they also represent Myron Winkler who has individually sued the defendants for 1.2 million dollars in damages. *Winkler v. IDS Realty Trust et al.,* 4–75 Civ. 325 (D.Minn.1975). It is their contention that Mr. Winkler's claim presents an inherent conflict of interest due to its size. This problem was resolved at the hearing on November 17, 1975. By virtue of the Court's instructions, counsel for the plaintiffs agreed to disassociate themselves from Mr. Winkler's case should this action be certified as a class action.[8]

■ The last argument of the defendants with respect to adequacy of representation concerns the representative plaintiff, Stephen Goldfarb. Mr. Goldfarb is an attorney

---

**6.** Mr. Myron Winkler has individually sued the defendants for 1.2 million dollars. *Winkler v. IDS Realty Trust et al.,* 4–75 Civ. 325 (D.Minn. 1975). The defendants have suggested that certification be withheld pending a resolution in *Winkler.* This procedure was adopted in *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3rd Cir. 1974). However, the *Carte Blanche* decision was premised on the defendants' agreement to be bound by one way intervention if they lost on the merits. Not only are the facts of this case entirely distinguishable from those presented in *Carte Blanche,* but also the defendants have not agreed to a procedure of one

way intervention. Therefore, allowing the *Winkler* case to proceed as a test case is inappropriate.

**7.** *See,* Hearing re Class Action Certification, November 17, 1975, Tr. at 30–31.

**8.** Hearing re Class Action Certification, November 17, 1975, Tr. at 5–8. The defendants have also contested the adequacy of Dr. Laszewski's representation since he is unable to assume the cost of notice. This, however, was also resolved at the hearing on November 17, 1975. *Id.* at 9.

who shares office space with the attorney who is representing him, Miles Efron.[9] The defendants contend that this relationship on its face disqualifies Mr. Goldfarb from representing the class. They cite several authorities in support of their argument.

The cases cited by the defendants wherein the representation of the class was determined to be inadequate involved facts where the representative plaintiff and the attorney representing the class were either members of the same law firm, *Kriger v. European Health Spa, Inc. of Milwaukee, Wis.*, 56 F.R.D. 104 (E.D.Wis.1972); *Cotchett v. Avis Rent-A-Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y.1972), husband and wife, *Stull v. Pool*, 63 F.R.D. 702 (S.D.N.Y. 1974), or the representative plaintiff also acted as attorney for the class. *Graybeal v. Amercan Savings & Loan Association*, 59 F.R.D. 7 (D.D.C.1973). Those same type of facts are not present in the instant case. Mr. Goldfarb and Mr. Efron are not members of the same law firm. In addition, the management of this litigation is being conducted by Messrs. Grossman and Schumacher who are acting as co-lead counsel for the class; Mr. Efron has been retained only as private counsel for Mr. Goldfarb.[10]

Furthermore, the reasoning contained in the cases cited by the defendants is not applicable in the present case. The primary concern expressed by the Courts when the attorney for the class and the representative plaintiff are one in the same, or are members of the same law firm, or have some other type of close relationship, is that there is a danger of champerty:

> The Court further feels that Shields has not demonstrated competence to represent the class because he seeks to be not only the attorney for the class and be awarded a fee for his representation, he seeks in the same action, personal relief. The practice involved does not seem to the Court to comport with the high quali-

ty of objectivity, duty and integrity required of lawyers practicing in this Court and elsewhere. This case seems to involve a questionable method of soliciting legal business and such solicitation should not be encouraged. *Shields v. Valley National Bank of Arizona*, 56 F.R.D. 448, 450 (D.Ariz.1971).

*See also, Stull v. Pool, supra; Cotchett v. Avis Rent-A-Car System, Inc., supra; Graybeal v. American Savings & Loan Association, supra.* This danger is not present in the instant case for the simple reason that other plaintiffs besides Mr. Goldfarb are seeking relief. The only possible problem that the court can discern as a result of the relationship between Mr. Goldfarb and Mr. Efron is the question of Mr. Efron's attorneys' fees. However, as noted by the Court in *Lamb v. United Security Life Company*, 59 F.R.D. 25 (S.D.Iowa 1972), the awarding of attorneys' fees is under the control of the Court and any problems which may arise can be resolved when that matter is taken under consideration at a later date. Therefore, the Court finds that Mr. Goldfarb can adequately represent the class within the meaning of Rule 23(a)(4).

■ Finally, the defendants have requested that a proof of claim form be submitted to potential members of the class prior to certification which contains an opt-in clause. Not only is such a procedure contrary to the provisions of Rule 23(c)(2) but the overwhelming weight of authority is against the utilization of an opt-in form of notice. *See Manual For Complex Litigation*, § 1.45 at 20 and cases there cited. Therefore, the defendants' request is denied.[11]

On the basis of the foregoing conclusions, IT IS ORDERED THAT:

1. The plaintiffs' motion to certify this litigation as a class action with the class consisting of those persons who pur-

---

**9.** See, plaintiff Goldfarb's answers to interrogatories, # 1 and 17.

**10.** *Id.*

**11.** As discussed at the hearing on November 17, 1975, should the parties agree, the Court is willing to entertain some experimentation with respect to the form of notice used. *See,* Hearing re Class Action Certification, November 17, 1975, Tr. at 53–57.

chased shares in IDS Realty Trust during the period August 16, 1974 through April 15, 1975 and suffered damage, is hereby granted;

2. Counsel for the plaintiff class representatives are directed to obtain independent counsel to represent Mr. Myron Winkler in the case of *Winkler v. IDS Realty Trust et al.*, 4–75 Civ. 325 (D.Minn.1975);

3. The Court directs counsel for the plaintiffs class representatives to prepare a form of notice that will fulfill the requirements of Rule 23(c)(2) and a proposed order specifying the method of giving notice to the class and to submit such form of notice and proposed order to the Court and to counsel for the defendants within 40 days from the date hereof. The defendants are given 20 days from their receipt of the proposed form of notice and order in which to file objections thereto;

4. All the parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addresses by order of this Court. This order does not forbid, 1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or 2) communications occurring in the regular course of business which do not have the effect of soliciting representation by counsel, or misrepresenting the status, purposes or effect of the action and orders therein.

IT IS SO ORDERED.