Robert MARKEWICH as Trustee for Judith Markewich, Plaintiff,

v.

Park T. ADIKES et al., Defendants.

Harry LEWIS, Plaintiff,

v.

Park T. ADIKES et al., Defendants.

Nos. 75 C 1349 and 75 C 1820.

United States District Court, E. D. New York.

July 25, 1977.

Law Offices of Ira Jay Sands, New York City, for plaintiff Markewich.

Stull, Stull & Brody, New York City, for plaintiff Lewis.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

By motions argued November 19, 1976, plaintiffs Robert Markewich and Harry Lewis each seek class action certification for their respective complaints seeking recovery for the alleged fraudulent conduct of the defendants in connection with the management of and sale of shares in a real estate investment trust (REIT). This memorandum represents the undersigned's findings and conclusions with respect to these two motions for class certification.

### I.

Robert Markewich, as trustee for his daughter Judith Markewich, purchased 100 shares of BT Mortgage Investors securities on January 3, 1973 and brings this action seeking to represent all nonprospectus, open market public purchasers of those securities from August 5, 1970 through December 31, 1974. Alleging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.10b–5, plaintiff seeks recovery against Bankers Trust Mortgage Investors (BTMI), a real estate investment trust; the trustees of BTMI; BT Advisors, Inc., BTMI's investment advisors; various officers and directors of BT Advisors; Bankers Trust New York Corporation, the parent corporation of BT Advisors; Sackman-Gilliland Corporation, a subsidiary of Bankers Trust New York Corporation; and Peat, Marwick, Mitchell and Company, BTMI's accountants.

Plaintiff Markewich urges that from the inception of the REIT the defendants entered into a plan to conceal the true picture of its financial condition and operations. *Markewich* Complaint ¶ 16. Specifically, he alleges that the financial statements, quarterly reports, and related publications which were issued, approved, or certified by the various defendants contained false or misleading statements and material omissions of fact with respect to, *inter alia*, the income from and stability of mortgage loan investments; the adequacy of loan reserves; the manner of selecting suitable loan candidates; the quality of managerial services; and the extent of loan losses anticipated or incurred. The complaint further alleges that plaintiff Markewich and the class he seeks to represent were unaware that the reports, publications, and statements were false and misleading and that they reasonably relied upon them when purchasing BTMI securities to their detriment.

### II.

Harry Lewis purchased 35 shares of BTMI on April 3, 1974 and seeks to represent all persons who, between November 1, 1973 and November 25, 1974, purchased the REIT's securities as a result of the allegedly false reports and statements disseminated by the defendants during that period. In addition to the defendants listed in the *Markewich* complaint, Lewis also names the directors and/or officers of BT Advisors during the 1973–74 period.

Alleging similar violations of 15 U.S.C. 78j(b) and 17 C.F.R. 240.10b–5 as in *Markewich*, Lewis contends that: "As a result of the wrongful acts and material omissions

complained of, BT[MI] securities were purchased by the plaintiff and other security holders similarly situated, in a false market climate and at artificially inflated prices caused by the defendants." *Lewis* Complaint ¶ 25.

### III.

Although Markewich and Lewis seek to represent different classes and can be said to advance different theories of recovery under 15 U.S.C. § 78j(b), central to each complaint is the following sketch of the financial history of BTMI:

BTMI reported net income of $2,300,000 for the fiscal year ended September 30, 1971 and $4,595,000 for the fiscal year ended September 30, 1972. For the fiscal year ended September 30, 1973 BTMI reported earnings of $5,632,000 ($2.52 per share), loans and investments at $153,818,000, and had allocated $303,000 as an allowance for possible losses on its loans and investments.

For the first quarter of the 1974 fiscal year ended December 31, 1973, earnings were reported at $1,080,000 ($.50 per share); for the six months ended March 31, 1974, $2,054,000 ($.95 per share); for the nine months ended June 30, 1974, $2,621,000 ($1.22 per share). Dividends of $.50, $.35, and $.25 per share were declared for the first three quarters of fiscal year 1974 respectively.

In the fourth quarter of 1974, however, BTMI disclosed that its financial picture had altered drastically. For the quarter ended September 30, 1974, BTMI reported a loss of $1,898,000; that its net income for the entire year was but $723,000; and that it had raised its allowance for possible losses from $303,000 to $3,235,000. Colloquially, the bottom had fallen out of BTMI, and both Markewich and Lewis contend that the defendants failed to disclose to the investing public the circumstances which led to this dramatic reversal.

### IV.

Before discussing each plaintiff's compliance with F.R.C.P. 23, the undersigned must first determine whether classes of plaintiffs indeed exist and whether Markewich, Lewis, or both are members of those classes which they seek to represent. *See Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

Plaintiff Markewich contends that the defendants joined in a long, continuous, interrelated course of conduct to defraud open-market purchasers in violation of 15 U.S.C. § 78j(b) and rule 10b–5. He seeks certification of a class of purchasers who bought BTMI over a 53–month period from August 5, 1970 through December 31, 1974. In addition to alleging that defendants "schemed" to defraud the investigating public from the inception of BTMI, Markewich claims that BTMI's financial statements in its 1971, 1972, and 1973 annual reports and in its quarterly reports for 1971, 1972, 1973, and 1974 contained the same types of false and misleading statements and material omissions with respect to BTMI's financial condition, earnings reported, dividends paid, provisions for loan losses, reserves and asset structure. Markewich himself purchased his shares of BTMI on January 3, 1973.

Plaintiff Lewis contends that there was a common course of conduct in failing and omitting to state the inadequacy of loan loss reserves, or to thereafter correct the statements and inadequacies, and seeks certification of a class of BTMI security holders who purchased their securities during the period of approximately 13 months from November 1, 1973 through November 25, 1974 at inflated prices caused by or resulting from defendants' false, misleading, and deceptive statements or material omissions contained in BTMI's financial statements and reports. Lewis purchased his shares of BTMI on April 3, 1974.

The *Markewich* and *Lewis* actions, apparently the only two suits which have been instituted against these defendants involving BTMI, are not only similar in their allegations and theories of liability, but their proposed class designations also overlap. Plaintiff Markewich seeks to represent a 53–month class covering the period

from August 1970 through December 1974. Plaintiff Lewis, on the other hand, focuses his attention on only the latter portion of this time frame and seeks to represent a 13–month period from November 1, 1973 through November 25, 1974. As a prospective class representative, plaintiff Lewis, based on the date of his purchase of BTMI, is situated virtually in the middle of his proposed 13–month class. Plaintiff Markewich, on the other hand, with a purchase date of January 3, 1973, finds himself toward the latter portion of his proposed class period, and, hence, closer to the class period sought to be represented by Lewis.

█ Whether viewed as too long to provide predominately common issues of law or fact, *see, e. g., Fruchthandler v. Blakely,* 73 F.R.D. 318 (S.D.N.Y.1976); *Bowe v. First of Denver Mortgage Investors,* Civil No. 75–M–350 (D.Colo., Mar. 16, 1976); *Blumenthal v. Great American Mortgage Investors,* 74 F.R.D. 508 (N.D.Ga.1976), or too long for plaintiff's purchase to be typical, *see, e. g., Trattner v. American Fletcher Mortgage Investors,* 74 F.R.D. 352 (S.D.Ind.1976); *Elster v. Baker,* Civil No. 74–709 (M.D.Fla., Sept. 22, 1976); *Elkind v. Liggett & Myers, Inc.,* 66 F.R.D. 36 (S.D.N.Y.1975), the 53–month class period proposed by plaintiff Markewich is unacceptable for certification. However, since the last 13 months of the proposed *Markewich* class can be adequately maintained as a class action by plaintiff Lewis, see V–VIII *infra,* and since plaintiff Markewich can adequately represent a class based on an abbreviated time period, see *id.,* the undersigned concludes that the Markewich motion should be considered as one seeking certification of a class of nonprospectus, open market purchasers of BTMI who purchased during the period from December 30, 1970 (the date of the first BTMI financial report) to October 31, 1973 (the day before the *Lewis* class period begins).

## V.

### NUMEROSITY

It is not disputed, nor could it be, that the proposed classes in both the *Markewich* and *Lewis* actions are each so numerous that joinder of all members would be impracticable. Hence, both proposed classes satisfy the requirement of F.R.C.P. 23(a)(1).

## VI.

### COMMONALITY

Class action certification here requires not only that questions of law or fact common to the class be present, F.R.C.P. 23(a)(2), but also that the common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other methods for the fair and efficient adjudication of the controversy. F.R.C.P. 23(b)(3). The undersigned concludes that both the *Markewich* and *Lewis* actions satisfy these requirements.

#### *Markewich*

█ As defendants correctly note, "[w]here the plaintiff alleges omissions from several documents published over a period of time, he must show at least a common thread which unites the several documents into one common course of action. *See Feldman v. Lifton,* 64 F.R.D. 539 (S.D.N.Y.1974)." *Fruchthandler v. Blakely, supra,* 73 F.R.D. at 321. The thrust of defendants' argument premised on this statement becomes severely blunted, however, in view of the undersigned's reduction of the proposed class period. Moreover, as they were more fully described in IV, *supra,* the alleged misrepresentations and omissions of defendants in the financials, quarterly and annual reports, etc. "present a nucleus of facts necessarily common to all members of the class, and, because of the interrelatedness of the statements and their effect on the Trust's profits, the common questions predominate over any individual questions which may arise." *Byrnes v. IDS Realty Trust,* 70 F.R.D. 608, 613 (D.Minn. 1976) (citations omitted). See also *Aboudi v. Daroff,* 65 F.R.D. 388 (S.D.N.Y.1974); *In re Memorex Security Cases,* 61 F.R.D. 88 (N.D.Cal.1973).

Although defendants also insist that the fluctuating market for REIT securities generally during the proposed period vitiates any claim of commonality, the following language in *Aboudi v. Daroff, supra,* is most responsive:

> While this argument has an initial appeal, it contains a fundamental flaw. The course of action of the stock is not equivalent to the course of action of the defendants. It is the latter which is important in determining this class action motion. Plaintiff's claim is that the reports and statements were related to one another, and that as a result of these related actions, the market price of [BTMI] stock was inflated above its true value at every point throughout the period, regardless of what the price happened to be or in what direction it happened to be moving at any particular time. To properly plead such a course of conduct, plaintiff need not show any relationship between the alleged misstatements of any one time period and the market activity of another. 65 F.R.D. at 391.

In sum, not only does the proposed *Markewich* class exhibit common issues of law and fact, but these common issues predominate, and a class action is the most efficient manner of proceeding.

*Lewis*

■ As with the *Markewich* complaint, defendants here argue that the multiple documents issued and market fluctuations present during the proposed *Lewis* class period preclude a finding of commonality. As enunciated in *Blackie v. Barrack,* 524 F.2d 891, 903 n. 19 (CA 9 1975), however, [r]ule 10b–5 liability is not restricted solely to isolated misrepresentations or omissions; it may also be predicated on a "practice, or course of business which operates * * * as a fraud * * *" Under that section class members may well be united in establishing liability for fraudulently creating an illusion of prosperity and false expectations.

Moreover, even when misrepresentations are unrelated, class members may share a common question of law or fact.

Of course, if an early misrepresentation is undissipated, a later purchaser will present a common question even if another misrepresentation has intervened. But even if the effect of the earlier misrepresentation is dissipated, proof of the earlier misrepresentation may be relevant to the latter purchaser's case. Proof of an earlier fraud and its effects may be relevant circumstantially to establish duty standards, culpability, or damages regarding the later fraud; it would establish background information about the defendant common to both suits.

*See also Byrnes v. IDS Realty Trust, supra; Aboudi v. Daroff, supra; Lewis v. Black,* 74 F.R.D. 1 (E.D.N.Y.1976).

The alleged common course of conduct engaged in by the defendants was the failure to disclose that the loss reserve was woefully inadequate, commencing with the dissemination of BTMI's 1973 earnings on November 1, 1973, and thereafter in earnings reports for the first, second, and third quarters. Not only does such an allegation raised on behalf of the proposed class satisfy the requirements of F.R.C.P. 23(a)(2), but, as indicated above when discussing the *Markewich* class, it satisfies F.R.C.P. 23(b)(3) as well.

### VII.

### TYPICALITY

■ Having found in VI, *supra,* that both the *Markewich* and *Lewis* proposed classes satisfy F.R.C.P. 23(a)(2) & (b)(3) under the common course of conduct theory, a finding of typicality pursuant to F.R.C.P. 23(a)(3) is facilitated. As did the defendants in *Byrnes v. IDS Realty Trust, supra,* the defendants here argue that the claims of the representative plaintiffs are not typical of their respective classes since there were multiple documents, each issued on a different occasion, and each relating to its own distinct time period. Since neither of the representatives purchased in each one of the "distinct" time periods thus created, the argument continues, neither representative could be similarly situated with respect to

all members of his proposed class. However, this argument is unduly restrictive of the typicality required under F.R.C.P. 23(a)(3). In *Byrnes, supra,* the court noted:

Rule 23(a)(3) does not require that the claims of the representative parties and the remaining members of the class be identical. The crucial inquiry is whether the potential conflict of interest is minimal and outweighed by the existence of substantial questions common to all members of the class. Numerous courts have held that the requirements of Rule 23(a)(3) are satisfied when a course of similar conduct exists on the part of the defendants which present substantial questions common to all members of the class notwithstanding the existence of some conflict of interest. *See Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968); *Tucker v. Arthur Andersen & Co.,* 67 F.R.D. 468 (S.D.N.Y.1975); *In re U. S. Financial Securities Litigation,* 64 F.R.D. 443 (S.D.Cal.1974); *Aboudi v. Daroff,* 64 F.R.D. 388 (S.D.N.Y.1974); *In re Memorex Security Cases,* 61 F.R.D. 88 (N.D.Cal. 1973); *Siegel v. Realty Equities Corporation of New York,* 54 F.R.D. 420 (S.D.N.Y.1972); *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968); *Kronenberg v. Hotel Governor Clinton, Inc.,* 41 F.R.D. 42 (S.D.N.Y.1966). 70 F.R.D. at 611–12.

■ With respect to the *Lewis* action, defendants raise the additional argument that, since he is a "professional plaintiff", Lewis' claim is not typical of the class which he seeks to represent. This argument was specifically rejected by Chief Judge Mishler in *Lewis v. Black, supra,* when it was similarly raised against Lewis then, and the undersigned rejects it now. See *Blackie v. Barrack, supra,* 524 F.2d at 905.

## VIII.

### REPRESENTATIVENESS

In *Dorfman v. First Boston Corp.,* 62 F.R.D. 466 (E.D.Pa.1974), the court defined the Rule 23(a)(4) test for adequacy of representation as follows:

The standards of Rule 23(a)(4) are met if it appears certain (a) that the representative party and his counsel will vigorously prosecute the action and (b) that the interests of the class representative are not in conflict with those of the other members of the class. *Id.* at 473 (citations omitted).

Both plaintiffs have established their compliance with these requirements of F.R.C.P. 23(a)(4).

### *Markewich*

■ Defendants urge that, because Robert Markewich brings this suit as a trustee for his daughter Judith, he cannot be a proper class representative and, because plaintiff's counsel has received reprimands from other judges in the past, the attorney also fails to meet the requirements of F.R. C.P. 23(a)(4). However, "a person's role as a trustee in and of itself does not preclude such a person from being an adequate representative of a class." *Seiden v. Nicholson,* 69 F.R.D. 681, 689 (N.D.Ill.1976). Although he would function as a fiduciary of both the trust and the class, there is no indication that such a dual role would present a real conflict here. As an attorney, Robert Markewich would be aware of and alert to avoid any potential conflict; as a father and trustee, he has agreed to personally assume the expenses of the litigation; and, as a class representative, he has not been shown to be anything other than a capable, interested, and active plaintiff who will vigorously prosecute the suit.

■ Turning to the objections raised against plaintiff Markewich's counsel, while the allegations that this attorney may have acted less than professionally in the past are disturbing, there has been an insufficient showing here that the attorney has not and will not fairly, professionally, and vigorously prosecute this action as the class representative's chosen counsel. Should he not measure up to the demands of this particular class action as it progresses, the court has ample remedial power.

*Lewis*

 As it was when raised in the context of F.R.C.P. 23(a)(3), defendants' suggestion that Lewis' status as a "professional plaintiff" precludes him from qualifying under F.R.C.P. 23(a)(4) is rejected. *See also Lewis v. Black, supra; Blackie v. Barrack, supra; Lewis v. Realty Equities Corp.*, CCH Fed.Sec.L.Rep. ¶ 94,459 (S.D.N.Y.1974). In fact, plaintiff Lewis' past experience suggests that he and his counsel will be able to provide vigorous advocacy for the members of the class which he now seeks to represent. Defendants have also raised the spectre of Lewis' potential conflicts with the interests of the class by suggesting that there exist special claims and defenses peculiar to plaintiff Lewis. However, not only have they raised little more than a mere spectre, but they also invite a resolution on the merits which would be improper at this stage of the litigation. *See, e. g., Kesler v. Hynes & Howes Real Estate, Inc.*, 66 F.R.D. 43 (S.D.Iowa 1975); *Victorian Investors v. Responsive Environments Corp.*, 56 F.R.D. 543 (S.D.N.Y.1972); *Mersay v. First Republic*, 43 F.R.D. 465 (S.D.N.Y.1968).

## IX.

 Plaintiff Markewich's motion for class certification is granted to the extent that the class certified shall consist of those nonprospectus, open market purchasers of BTMI who purchased during the period from December 30, 1970 to October 31, 1973.

## X.

Plaintiff Lewis' motion for class action certification is granted and he shall represent those nonprospectus, open market purchasers of BTMI who purchased during the period from November 1, 1973 through November 25, 1974.

## XI.

Counsel for all parties are to appear before the undersigned for a status conference at 900 Ellison Avenue, Westbury, New York, on August 25, 1977 at 9:00 A.M. Counsel should be prepared to discuss, *inter alia*, the feasibility of proceeding with coordinated discovery; the manner in which the trial of these two actions can best be handled; and a timetable for bringing these actions to a prompt resolution.

## XII.

Settle order on 10 days notice, which order shall provide for notice to members of the class under F.R.C.P. 23(c)(2). It is suggested that plaintiffs Markewich and Lewis coordinate and consolidate their respective notices to the class, with counsel for plaintiff Lewis undertaking the responsibility for presenting the proposed notice to the defendants and the court.

SO ORDERED.