Sylvia **RICHLAND** and **F. L.** Salomon & Co., etc., Plaintiffs,

v.

Owen **R. CHEATHAM** et al., Defendants.

Malcolm **M. STULL** and **Marilyn Stull,** Plaintiffs,

v.

**GEORGIA–PACIFIC CORPORATION** et al., Defendants.

Bernard **S. SCHWARTZ,** Plaintiff,

v.

Dorothy **D. BROOKS** et al., Defendants.

Marvin **SCHEIN,** etc., Plaintiff,

v.

Dorothy **D. BROOKS** et al., Defendants.

Betty **K. WEINTRAUB,** Plaintiff,

v.

**GEORGIA–PACIFIC CORPORATION** et al., Defendants.

**Nos. 66 Civ. 1300, 66 Civ. 1473, 66 Civ. 1695, 66 Civ. 1803, 66 Civ. 1849.**

United States District Court S. D. New York.

July 27, 1967.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs Richland et al. (Paul L. Ross and Donald N. Ruby, New York City, of counsel).

Stull & Stull, New York City, for plaintiffs Stull (Richard J. Stull, New York City, of counsel).

Milton Paulson, New York City, for plaintiff Schwartz.

Abraham I. Markowitz, New York City, for plaintiff Schein.

Harry B. Coran, New York City, for plaintiff Weintraub.

Shearman & Sterling, New York City, for defendant Georgia-Pacific Corporation (Robert L. Clare, Jr., and John E. Hoffman, Jr., New York City, of counsel).

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City, for certain defendants (Manly Fleischmann and William L. D. Barrett, New York City, of counsel).

Sullivan & Cromwell, New York City, for certain defendants (Marvin Schwartz, New York City, of counsel).

White & Case, New York City, for defendant Robert B. Pamplin (Edgar E. Barton and Konrad Knake, of counsel).

RYAN, District Judge.

We have before us a motion by defendants for an order determining that these five actions are not to be maintained as class actions because they do not meet the requirements of Rule 23(a) (4) or Rule 23(b) (3) and because the notice required under Rule 23(c) (2) cannot be given.

Specifically, defendants contend that the actions

(1) fail to meet the requirements that they will fairly and adequately protect the interest of the members of the alleged classes;

(2) fail to meet the additional requirements that (i) questions of law or fact common to the members of the alleged classes predominate over individual issues, and that (ii) the class action is superior to other available methods for the fair and efficient adjudication of the controversy. They also contend that no adequate notice could be given to the multitudes referred to in the Market Purchase Actions, and that other forms of adjudication could more fairly and judiciously be used to adjudicate claims of persons allegedly aggrieved, such as consolidation, for which they have separately moved.

The plaintiffs, of course, disagree with defendants and endeavor to show that they can comply with the requirements of Rule 23 in all respects.

There are five market purchase actions brought under Section 10(b) of the Securities Exchange Act of 1934, and Rules 10b–5 and 10b–6 thereunder, on behalf of the plaintiffs themselves, and representatively on behalf of all persons who purchased common stock of Georgia-Pacific Corporation during or after certain time periods described below. The plaintiffs claim that they and all persons were required to pay higher prices for such common stock than they would have paid, but for certain alleged acts and practices of the defendants.

The basic time periods referred to in the complaints are those initially described in the complaint in an action entitled "Securities and Exchange Commission v. Georgia-Pacific Corporation, et al." (66 Civ. 1215 (S.D.N.Y.)) [1] and roughly relate to certain dates which became relevant under the terms of certain acquisition agreements between Georgia-Pacific and other companies—(1) St. Croix Paper Company, (2) Vanity Fair Paper Mills, Inc., (3) Royal Fiber Corporation and Royal Container Co., San Francisco, and (4) Bestwall Gypsum Company. Such basic periods referred to in the complaints are:

(1) February 21 through April 15, 1963 (St. Croix);

(2) February 4 through March 24, 1964 (Vanity Fair);

(3) July 9 through July 29, 1964, (Royal); and

(4) February 17 through March 19, 1965 (Bestwall).

The gravamen of the allegations in the Market Purchase Actions is that during the basic periods the defendants, pursuant to a plan to manipulate the market, affected the price of Georgia-Pacific common stock on the New York Stock Ex-

---

[1]. That action was terminated on May 23, 1966 by the entry of a consent final judgment prior to trial enjoining defendants from certain manipulative practices in violation of the Securities Exchange Act of 1934.

change by causing Georgia-Pacific common stock to be bid for and purchased by the Georgia-Pacific Stock Bonus Trust, and by Georgia Pacific itself for its treasury, in a manner which caused an artificial rise in the price of Georgia-Pacific common stock. The alleged purpose of the defendants' acts and practices was to avoid or reduce Georgia-Pacific's obligations in respect of the above-mentioned acquisitions.

The defendants who have been served have denied the commission of the alleged acts and practices or any other acts alleged to give rise to a cause of action.

The five plaintiffs claim to be representative of an enormous and unidentified group of about 50,000 persons who purchased defendant's stock since February, 1963 through March, 1965 or April, 1966, but in reality their claims are brought on behalf of persons who purchased within or just prior to or just after one or more of the four basic periods alleged in the complaint and not merely on behalf of persons who purchased throughout an overall period running from February, 1963 through March, 1965 or 1966. There is no dispute as to this.

The only purchases made by these plaintiffs during the period in suit were of fractional shares arising from stock dividends. No fractional shares were issued by Georgia-Pacific in connection with stock dividends or stock splits. In each instance, however, if the number of shares registered in a shareholder's name entitled him to a fractional interest in a share, such person was entitled to purchase an additional fractional interest sufficient to make up one full share. In the case of stock dividends the fractional interest price was computed on the basis of the closing price of Georgia-Pacific common stock on the New York Stock Exchange on the record date. In the case of the 1964 stock split, the fractional interest price was computed on the basis of the closing price of Georgia-Pacific common stock on the New York Stock Exchange on June 15, 1964 to stockholders of record on May 8, 1964. The only stock

dividend record date that falls within any of the basic periods is February 7, 1964. The August 7, 1964 stock dividend record date falls 9 days after the basic period ending on July 29, 1964.

During or about the basic periods, Georgia-Pacific issued stock dividends to shareholders of record on:

(1) March 23, 1963 (record date February 8, 1963);

(2) March 21, 1964 (record date February 7, 1964);

(3) September 25, 1964 (record date August 7, 1964); and

(4) March 26, 1965 (record date February 8, 1965).

These would seem to be the logical dates for determining purchase price, but plaintiffs in a procrustean effort to fit their purchases into or close to a basic period have used shifting dates, such as the actual date the stock purchased was issued to them, or the date they sent in the order to purchase the fractional share, or the date of their check in payment. The effect of these respective positions is apparent from the following:

The *Schwartz* claim—here the single plaintiff alleges he made 4 purchases totaling $185.76, 3 of which fell within three manipulative periods and 1 nineteen days after such period while the market was still affected from the preceding manipulative period. The dates he uses to fix these purchases are the dates on which the defendant issued to him stock certificates pursuant to three dividends and one stock split: 3/23/63; 3/21/64; 7/14/64; 3/26/65. On this motion, he attempts to shift those dates to the earlier dates of the checks he used to pay for these fractional shares, but I have rejected these dates. According to defendant's dates, plaintiff purchased but two fractional shares for a total of $93.89 at a price fixed by the record date of the dividend declared, only one of which fell within a basic period (the dividend of 2/7/64 for the 3/21/64 certificate) and the other nine days after one of the basic periods (dividend 8/7/64 for a 9/25/64 certificate, not pleaded by plaintiff).

Neither the earliest, 3/23/63, nor the latest purchase, 3/26/65, on the basis of the record date of the dividend came anywhere near the basic periods; nor did the July 14, 1964 "purchase" which was on the basis of the earlier stock split of 6/15/64.

The *Richland* claim—is brought by two plaintiffs, an individual and a company, to which, over defendants' objection, have been added three more plaintiffs as intervenors. Here there is no question but that these two plaintiffs did not purchase within any of the basic periods—Richland having purchased 75 shares on April 23, 1965, 36 days after the last basic period, and Solomon having purchased 100 shares on May 8, 1964, 45 days after the last basic period. Intervening plaintiffs are not much better off: the Gold plaintiffs are alleged to have purchased 100 shares on July 8, 1963, almost 3 months after the first and 7 months before the second basic period; the Kleins, 50 shares on December 15, 1965, almost 9 months after the last basic period; and Steel, like the Schwartz plaintiffs, fixes the dates of his alleged "purchases" of the fractional shares with respect to stock dividends as 3/23/63, 3/21/64 and 5/26/65, which, as we have seen, are not the dates when their price was fixed. Like Schwartz, only the purchase of 3/21/64 based on the dividend of record date of 2/7/64 came within the second basic period. In Richland, therefore, no plaintiff and only one of the intervenors appears to be a member of some class to the extent of having purchased less than one share within one basic period.

The *Schein* claim—the only plaintiff here alleges he purchased 50 shares on October 14, 1964 at $57.37 per share, two and one-half months after the third basic period, and a fractional share for $28.38 on November 9, 1964, three months after the third basic period; a further fractional share for $30.75, which plaintiff says was made during the fourth period of manipulation, but the price of which was fixed by the record dividend of February 8, 1965 and issued March 26, 1965 —long after the third basic period and before the fourth; and a final fractional purchase of $30.66 on May 7, 1965, long after the expiration of the fourth basic period. Plaintiff Schein made purchases within none of the basic periods.

The *Weintraub* claim—this plaintiff alleges that she purchased stock on 3/23/63; 3/21/64; 7/14/64 and 3/26/65, so that she claims three purchases within the three basic periods and the last seven days after the fourth period. But like Schwartz, these are the dates when the plaintiff was issued one share on the basis of a dividend declared at an earlier date, only one of which—that of 2/7/64 for the 3/21/64 purchase—fell within a basic period and the other—the 9/25/64 certificate (not pleaded by plaintiff)— based on a record date, 8/7/64, nine days after the third basic period. According to defendant, the Weintraub total purchases on the basis of the two above dates totalled $98.73, only one of which fell within one of the four basic periods.

The *Stull* claim—these two plaintiffs, who have joined a derivative suit on behalf of Georgia-Pacific with their representative suit, say that they purchased 25 shares on 12/27/62, two months before the first basic period. But like Schwartz and Weintraub, they were issued shares on 3/23/63, 3/21/64, 7/14/64 and 3/26/65, only two of which, as we have seen, come within a basic period (2/7/64), and the other nine days after the third basic period (8/7/64). Their two fractional purchases here totalled $74.73.

The sum total of these five claims is that no one plaintiff purchased any shares in the open market during or even within one month after any of the four basic periods, and that, even if the purchase of a fractional share to round out a share (in respect of a stock dividend or stock split) were considered a market purchase, according to defendants' dates, only four of the plaintiffs can claim such minute purchases and at that, with respect to but two of the four periods. The dates fixed by defendants rather than the irrelevant ones chosen by plaintiffs are the logical ones, since it was on those

that the purchase price (which plaintiffs say was inflated) of the fractional shares necessary to round out a share was determined on the basis of the value of the stock dividend or stock split. The conclusion which defendants reach is that plaintiffs' interest and incentive, against a total of almost 700,000 shares having an aggregate value of about forty million dollars traded during the four basic time periods, and four times that much during the entire period, is too minute and negligible to be truly representative, and that the essential element of Rule 23 is absent in this case.

■ No one would dispute the infinitesimal interest of present plaintiffs, and it is one of the factors to be considered on this motion as bearing on the adequacy of their representation of what is said to be a class too numerous and too substantial to join. Numerosity and substantiality of interest are certainly to be taken into consideration by the Court whenever the question of the existence of a class comes up. Eisen v. Carlisle & Jacquelin, D.C., 41 F.R.D. 147; Kronenberg v. Hotel Governor Clinton, Inc., D.C., 41 F.R.D. 42. But if there is found to be a class and if it is found that the plaintiffs before the Court can in fact and are willing to represent numerous other people similarly situated, then their suit is entitled to class treatment irrespective of the size of their particular interest. The essential element is representation and this brings us to the real obstacle to the maintenance of these suits as a class action, which is that there is no plaintiff here who can be said to be a member of the class which he would represent; that is, that no plaintiff is similarly situated with all the members.

No one disputes the definition of the class. It consists of all persons who purchased Georgia-Pacific common stock on the New York Stock Exchange, either on the open market or through the purchase of a fractional share to round out a fraction of a share in connection with a stock dividend or a stock split; this class is alleged to have paid a price higher than it would have been required to pay if the alleged acts and practices of the defendants had not been committed. In effect, such class purports to include all persons who purchased Georgia-Pacific stock during the basic periods as well as persons purchasing such stock thereafter prior to the dissipation of the alleged manipulative effect caused by the defendants.

■■ Both sides agree that the predominant and common question is whether and when defendants manipulated market prices. Obviously, if the Court does not find manipulation, all claims including those of absent class members are at an end. But the plaintiff Schwartz goes further and says that (1) the question of whether each class member paid a manipulated price for the stock which he purchased is common to all class members, and (2) if any one class member is able to establish that he paid a manipulated price, the finding necessarily inures to the benefit of all class members because it is impossible to now determine when the effect of such manipulation was dissipated. From this, he concludes that anyone who purchased during the entire period, that is from February 1963 through April 1966, can proceed to try the question of manipulation so that, in effect, the class is the totality of purchasers throughout this period rather than four separate sets of purchasers coming within or close to the four manipulative basic periods, who clearly would be limited to proving manipulation only during such periods in which they purchased. The answer to this, and it is recognized by plaintiffs, is that they have not chosen to plead one manipulation extending throughout this entire period, i. e., "a common course of conduct over the entire period" (Harris v. Palm Springs Alpine, 9 Cir., 329 F.2d 909; Kronenberg v. Hotel Governor Clinton, Inc., supra). They have chosen to take full advantage of the complaint brought by the Securities and Exchange Commission and the judgment there obtained, and have employed the four periods there involved as the basis of the alleged manipulation. Having done so, the fact that they may include a general charge of conspiracy as

a background for the four basic periods does not convert the charge of alleged manipulations on four separate occasions into one uninterrupted manipulation. The complete and separate identity of the four manipulative periods is thoroughly demonstrated by the fact that the four periods are distinctly related to four separate acquisitions accomplished by defendants. It is also demonstrated by plaintiffs' strained efforts to fit their purchases into or close to one of these periods, which would be unnecessary if, in fact, any purchaser during the entire period was a member of the class. In fact, plaintiff Schwartz recognizes the danger of the one broad class argument when he urges that the class must be subdivided into four subclasses, each consisting of those persons who purchased during or after one of the four manipulative periods, because "of the likelihood that the effect of any one period's manipulations was spent prior to the later periods." If, as plaintiff maintains, any one class member is able to establish that he paid a manipulative price, the finding necessarily inures to the benefit of all class members, spelling success for all, the converse must be true and, if any one class member fails to prove that he paid a manipulated price, that finding spells the doom of all the other members. That this is not so is urged by all plaintiffs because, obviously, the fact that one purchaser in the first period may fail to establish that he paid a manipulated price does not preclude a purchaser in an earlier period from establishing that he paid a manipulated price because manipulation in a period in which he was not involved would be no part of his proof. A person who purchased early in the period, for example on February 7, 1964, the record date of one of the stock dividends, in order to maintain his case must demonstrate that the purchasing practices of the defendants between February 4 and his purchase on February 7 manipulated the New York Stock Exchange price which he paid. The result would be that all purchasers outside of the period in which plaintiff was competent to prove manipulation would go unrepresented,

and yet under Rule 23 they would be bound unless they elected not to be, following appropriate notice.

We cannot overlook the miniscule interest of the plaintiffs before us as affecting their motivation in representing such a tremendous class. The requirement of adequacy of representation of Rule 23(a) (4) is not present in any one of these plaintiffs and they do not represent absent members for the reason that they are not members of the same class. So, too, does this demonstrate that the question of law or fact common to them, that is, manipulated prices, does not predominate over the individual question of whether a purchaser paid a manipulated price. In this case, each purchaser must prove that he paid a manipulated price and, in doing so, he may be able to prove that other purchasers who purchased at or about the same time as he, also paid a similar manipulated price. To that extent, there is a common essential element limited to that group or class but, since in doing so he does not prove that purchasers at other periods of time paid a manipulated price, there is no predominant question of law or fact common to all purchasers throughout the four periods. There is or may be a predominant common question of law or fact within each class, but then we would be dealing with four class actions rather than the one before us and here again a further problem is presented in that the four classes cannot be defined now with any particularity.

Counsel for plaintiff Schwartz says that, in view of the lengthy periods of time elapsing between the manipulative periods, it is impossible now to say when the results of a prior manipulation were dissipated. There would be no benefit in permitting an action to be conducted nominally as a class action which would degenerate in practice into multiple lawsuits separately tried.

The absence of capacity and incentive of the representative plaintiffs to protect the interests of all the members of the alleged classes, present and absent, is tellingly demonstrated by the conflicting positions taken by them on this motion

and on a companion motion to be designated lead counsel. There is conflict among them as to what the classes are and as to who is and is not a member of the classes. Some charge that the others are not even members of the class they purport to represent; they even differ as to the period of manipulation, some giving it no cut-off date, some extending it through April 1966, and some to March, 1965. But even more troublesome is the fact that they charge one another with conflicts of interest among themselves; one counsel has stated that, unless he or his designee is chosen lead counsel, he would rather go it alone. And while there is bound to be a certain amount of conflict among plaintiffs' counsel jousting for position in these suits, their lack of incentive to fairly and adequately represent absent members from the prosecution of whose claims they stand to gain nothing or possibly suffer, is readily apparent. "Since all the members of the class are to be bound by the judgment, diverse and potentially conflicting interests within the class are incompatible with the maintenance of a true class action." Carroll v. American Federation of Musicians of the United States and Canada Local 802, 372 F.2d 155 (C.A.2d 1967).

Plaintiffs cite Fischer v. Kletz, 41 F. R.D. 377 (SDNY, 1966) as rejecting a similar argument that there was no predominant common question of fact or law. The alleged unlawful acts charged there consisted of seven false statements over a period of two years. It was plaintiffs' contention, which the Court adopted, that the seven statements were so interrelated, so interdependent and so cumulative that, in proving a false statement in one prospectus, a plaintiff would of necessity have to prove all the other alleged false statements in the other prospectuses—thus making it clear that all plaintiffs were harmed by the same alleged wrongful acts of defendants. From this, the Court in Fischer v. Kletz concluded that common questions of fact and law predominated and that that element of Rule 23(b) (3) had been met, tentatively at least.

Kronenberg v. Hotel Governor Clinton, Inc., supra, also relied on by plaintiffs, involved a class composed of two subclasses who had purchased 15% of the total securities involved representing more than $250,000 at two different times on the basis of alleged misrepresentations apparently emanating from a common course of conduct over the entire period. The Court there, without discussing the facts, found that the complaint before it at that time sufficiently alleged the elements of a class action but that, if it developed later that class treatment was not proper because the misrepresentations were so varied as to render class treatment unmanageable, the Court could change such order. The Court specifically noted that it was handicapped in its determination because the suit had not advanced sufficiently to determine finally whether it could be maintained as a class action. In addition, a very significant difference between that case and the action before us is that it found that the class, representing as it did a sizable number and a large financial interest of the class, adequately represented the absent members.

The tentative or conditional class treatment accorded in those cases is particularly obvious from "Fischer" where it was held that no notice need be given because it might prove unnecessary in the event the action did not continue as a class suit. Without notice, the most essential element of the class action— that those absent be bound—is missing; what was in effect ordered was a consolidation and not a class treatment. We do not approve of the practice of declaring an action a class suit with all its attendant problems with a warning that it may not so continue. It is preferable to proceed by consolidation and intervention without prejudice to subsequent class action treatment if, upon further development of the litigation, it appears appropriate. Such a proceedure is consistent with the direction of the rule that class treatment be directed as soon as practicable.

The problem of due notice is essential. The defendants urge that it is the one who seeks class treatment who should give the notice to the members he would represent and bind. But all the plaintiffs do not agree with this. Richland, whom we have seen represents no one in any of the four periods, would agree to give some sort of notice with defendants' help and that of all the other plaintiffs; while plaintiffs Schwartz and Schein say that notice is unnecessary so long as the question of whether the suits are to continue as class actions is open and subject to litigation. Plaintiffs would have all the benefits of Rule 23 without assuming any of the burdens. It is not what the defendants insist on, but what the rule and due process require. This cavalier treatment of the notice required by the rule is but another facet of the inadequacy of the plaintiffs' representation, and although they are quite aware that under the new Rule 23 actual notice must be given absent members of the class in order to afford them an opportunity not to be bound, they fail to come to grips with this problem and would bind all members of this tremendous class.

The other element of Rule 23(b) (3) that the class treatment must be found to be superior to other available methods for the fair and efficient adjudication of the controversy, has not been met by plaintiffs. Under the circumstances, and particularly because of the problem presented by the notice required by Rule 23, we find that the benefits of economy of time and effort and centralization of suits can be effectively obtained through consolidation and liberal intervention.

The motion of defendants that these actions are not to be maintained as class actions is granted without prejudice to renewal after the litigation has further progressed; the motion is granted to consolidate these five market purchase actions for purposes of discovery only at this time. The Court will consider later whether a consolidated trial is feasible or practical.

It is so ordered.