**KANE ASSOCIATES, a partnership, John F. Magda and Stanley Ferber, trustee for the benefit of Leslie Karen Deutsch and Michael Deutsch, Plaintiffs,**

v.

**Patrick J. CLIFFORD, A. Holly Patterson, William Goldfine, William W. Lowe, Thomas W. McMahon, Jr., Roy L. M. Boe, Leonard Braun, Arthur L. Carter, Abe Denholtz, Nelson Doubleday, Louis Feil, Charles J. Queenana, Jr., William J. Ronan, Carl K. Schornstein, Raymond P. Shaefer, Richard J. Walters, William A. Shea, Martin B. Bernstein, Joseph Stefan, Arthur Young & Company, Chemical Bank and Security National Bank, Defendants.**

No. 75 C. 141.

United States District Court, E. D. New York.

Jan. 6, 1978.

**404**

Wolf, Popper, Ross, Wolf & Jones by Benedict Wolf, Stephen D. Oestreich, New York City, for plaintiffs Kane Associates and John F. Magda.

Milberg, Weiss, Bershad & Specthrie by Lawrence A. Milberg, Jerome Congress, New York City, for plaintiff Stanley Ferber.

White & Case by Laura B. Hoguet, Vincent R. Fitzpatrick, Jr., New York City, for defendant Arthur Young & Co.

Lord, Day & Lord by Leonard S. Leaman, New York City, for defendant Security Nat. Bank.

Shea, Gould, Climenko & Casey by Joseph Ferraro, New York City, for defendants Patterson, Boe, Denholtz, Doubleday, Ronan, Schornstein and Walters.

Milgrim Thomajan & Jacobs by David P. Langlois, New York City, for defendants Queenana and Shafer.

Cahill, Gordon & Reindel by David R. Hyde, Miles M. Tepper, New York City, for defendants Clifford, Lowe, McMahon, Braun, Carter, Feil, Shea and Bernstein.

Cravath, Swaine & Moore by James J. Beha, New York City, for defendant Chemical Bank.

Stolz, Goldfine & Stolz, New York City, for defendant Goldfine.

## MEMORANDUM DECISION AND ORDER

SIFTON, District Judge.

This action is before the Court on the motion of plaintiffs, Kane Associates, John F. Magda, and Stanley Ferber, trustee for the benefit of Leslie Karen Deutsch and Michael Deutsch, to determine that this proceeding may be maintained as a class action against all of the named defendants, except Chemical Bank, under the provisions of Fed.R.Civ.P. 23. The complaint alleges violations by the class action defendants of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5 promulgated thereunder, as well as pendent common law claims. The class is defined in the pleadings as consisting of all persons or entities, other than the defendants, who purchased securities of defendant Security National Bank ("SNB") during the period of January 13, 1973 through January 20, 1975 and is said to include several thousand persons. For the reasons set forth below, the Court finds that the requirements of Rule 23(a) have been met and determines that this action may be maintained as a class action pursuant to Rule 23(b)(3).

The complaints [1] allege that the class action defendants entered into a scheme and course of conduct to present during the proposed class period a false and inflated financial picture of SNB to the investing public, in that the class action defendants failed to disclose certain material information relating to the financial condition of SNB, necessary to make the information distributed by them during the class period not misleading. More specifically, it is alleged in the complaints that SNB entered into certain loans which were highly speculative, risky and improvident and which were likely to show, and did show, a high delinquency rate. It is further alleged that the director defendants knew, or should have known, these facts and that they

---

1. The complaints in the *Kane* action and in the *Ferber* action were consolidated pursuant to order of Judge Costantino, dated November 18, 1975. These actions contain class allegations against SNB, its directors, and Arthur Young & Company ("Young"), SNB's accountant, but not against Chemical Bank.

nevertheless failed to report in SNB's annual reports, public releases, and other financial statements the heavy losses which SNB both anticipated and sustained in its loan portfolio and that there were insufficient reserves set up to cover losses on these loans.

In addition, it is alleged that the failure of the class action defendants to report adequately the true status of SNB's loan commitments caused SNB's financial statements, issued during the proposed class period, to show an inflated income picture and an appearance of financial stability when, in fact, it is alleged, SNB was in danger of failing. The absence of disclosure of this information, plaintiffs contend, caused the market value of SNB stock to be artificially inflated.

Plaintiffs also allege that it was represented that the financial statements in question were prepared in accordance with generally accepted accounting principles and that those financial statements accurately presented the financial condition of SNB, when, in fact, defendant Young knew, or should have known, that the financial statements of SNB were not so prepared and did not present a true and fair picture of the financial condition of SNB.

Finally, the complaints allege that because of the class action defendants' conduct, plaintiffs and other members of the class paid artificially inflated prices for their SNB stock to the injury of plaintiffs and other members of the proposed class.

The class action defendants' opposition to the maintenance of this proceeding as a class action is on two grounds. First, they argue that questions affecting only individual members of the class predominate over questions of fact and law common to the class. Secondly, they argue that plaintiffs will not fairly and adequately protect the interests of the class because of the degree to which the claims of the named plaintiffs vary from the typical claims of other members of the class.

The defendants' arguments concerning lack of commonality present a long list of asserted individual issues, but they group themselves around a limited number of contentions which are dealt with below.

First, defendants argue that the issues of materiality and scienter here are individual because of the existence of varying economic conditions over the two year class period changing the amount of the loan loss reserve required at the date of issuance of each of fourteen allegedly misleading documents disseminated to the public by various defendants. Plaintiffs, however, undertake to do more than simply prove as to each of these documents that they were misleading in that they failed to set up adequate loss reserves in the light of varying economic conditions prevailing at the time. They also undertake to prove more than that each document viewed in isolation was the subject of a separate individual decision by each defendant to deceive. Instead, plaintiffs propose to show that under any set of economic conditions prevailing during the class period, investors would have regarded it as important to know more concerning SNB's loan portfolio, loss reserves and net income than they were told in any of the documents allegedly disseminated by defendants. And plaintiffs further undertake to show that the decision by defendants to disseminate these documents was not made pursuant to discrete, individual determinations with respect to each document, but rather as a result of a single, overall scheme entered into by each defendant pursuant to which all the documents referred to were distributed.

This case presents, in other words, claims with respect to an alleged continuing course of conduct pursuant to which a series of documents containing interrelated and cumulative misrepresentations were employed—the kind of claim which numerous cases have recognized as presenting common issues with regard to materiality and scienter on facts similar to those at issue. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Weiss v. Drew National Corp.*, 71

F.R.D. 429 (S.D.N.Y.1976); *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.1974); *In re United States Financial Securities Litigation*, 64 F.R.D. 443 (S.D.Cal.1974); *Siegel v. Realty Equities Corp.*, 54 F.R.D. 420 (S.D.N.Y.1972); and *Fischer v. Kletz*, 41 F.R.D. 377 (S.D.N.Y.1966).

The class action defendants take special note of the issuance of a qualified opinion by Arthur Young & Co., which, the class action defendants argue, creates differing issues at least of materiality between those members purchasing securities before and those purchasing after the opinion's issuance. The Arthur Young report is said to have qualified Arthur Young's opinion as to the fairness of the financial statements by stating that, in finding those statements to be fair presentations of SNB's financial condition, Arthur Young assumed, without being in a position to determine, the ultimate collectibility of some $13 million of loans extended by SNB to a creditor which had filed for protection under the Federal Bankruptcy Act.

Here again, however, it bears noting that plaintiffs are not contending that defendants' disclosures were inadequate simply because of an impairment of SNB's financial condition which may or may not have arisen because of doubts as to the collectibility of some $13,000,000 of loans to one creditor. It is plaintiff's position that, whatever the status of those particular loans and both before and after doubts as to their collectibility arose, a reasonable investor was entitled to know more about SNB's financial condition than defendants disclosed.[2]

■ The class action defendants next argue that there are individual issues of reliance and causation in this case which, taken together with other individual issues, predominate over issues common to all members of the class. The linchpin of de-

fendants' argument is that the case involves "misrepresentations" which defendants contend can refer solely to "misstatements" of material fact rather than omissions or a continuing failure to disclose. Defendants appear to concede, understandably in light of the case law cited below, that reliance is not an issue if omissions are involved. It is, however, blinking one's eyes to reality to contend that this case is a misstatements case when both complaints affirmatively allege the contrary. It is, of course, the complaints which control and not plaintiffs' counsels' use of the ambiguous term "misrepresentation" in their memorandum of law on this motion. The cases in this Circuit establish "beyond peradventure" that plaintiff will not need to prove that each purchaser relied upon the omissions here alleged in order to establish causation in fact. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Herbst v. ITT*, 495 F.2d 1308, 1316 (2d Cir. 1974); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 239–240 (2d Cir. 1974); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 375 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 40 (S.D.N.Y.1975), citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Even where the omissions are said to have operated in tandem with misstatements pursuant to a common fraudulent scheme, the authorities have recognized a need to permit proof of purchase and materiality to substitute for proof of subjective individual reliance where, as here, the claim is that the combined course of deception inflated the price of the stock purchased by class members on the open market. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429

---

2. It may be that at some later date defendants will be able to show, at least *prima facie*, that the Arthur Young qualified opinion revealed a situation so financially precarious at SNB that it no longer mattered to a reasonable investor whether the bank had adequate loan reserves to cover other loans. In such circumstances, the division of the class into two subclasses

might be appropriate pursuant to Rule 23(c)(4). However, on the record on this motion, it would be sheer speculation to conclude that the disclosure of this one group of possibly uncollectible loans relieved defendants of their alleged responsibilities with regard to the disclosure of additional otherwise material financial information.

U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Weiss v. Drew National Corp.,* 71 F.R.D. 429 (S.D.N.Y.1976). Defendants' further argument that each defendant's role in preparing each document must be explored ignores plaintiffs' undertaking to show a common scheme in which all defendants participated and pursuant to which each misrepresentation was made.

Defendants carry their argument one step further by arguing, on the basis of *Richland v. Cheatham,* 272 F.Supp. 148 (S.D.N.Y.1967), that even if plaintiffs' complaint is read as alleging that defendants' fraudulent scheme had the effect of inflating the price at which class members purchased their shares, the issues thereby raised are individual issues as to whether each class member's purchase was at a price manipulated by these defendants. *Richland,* however, unlike this case, involved four separate time periods during which Georgia Pacific was alleged to have run up the price of its stock by open market purchases. Obvious distinctions exist between such separated market manipulations effected by day-to-day trading and the allegedly cumulative and related effect of defendants' alleged non-disclosures and misstatements upon the market price of SNB stock in the case before the Court. This case is in all respects closer to *Aboudi v. Daroff,* 65 F.R.D. 388 (S.D.N.Y.1974), which distinguished *Richland* upon grounds which are those mentioned above. Where plaintiffs are able to prove, as they undertake to prove in this case, that all stock purchased by the class was subjected to a single inflationary scheme which in fact had an inflationary impact through the proposed class period, then the only individual issues remaining are as to the extent of the inflation at the date of the class member's purchase, an individual issue with regard to damages which should not, in and of itself, defeat the class action as a class action.

Finally, defendants argue that individual issues of law may exist with regard to plaintiffs' pendent common law claims because of presumptively different residences of some members of the proposed class. What variance may exist between the laws of the various states involved, what states we are to consider, and what basis there is to presume that New York law will not apply to the fiduciary or other responsibilities of New York directors of a New York bank is left unstated. The Court cannot, on the basis of this speculation, conclude that the numerous common questions of law and fact demonstrated by plaintiffs in connection with the federal securities law claims do not predominate over individual legal issues arising as a result of conflicts in state law.

The second branch of defendants' opposition to plaintiffs' showing with regard to the propriety of class certification in this case relates to the alleged unfairness and inadequacy of the named plaintiffs' representation as a result of the degree to which their claims are not of the type of those of others of the class.[3] In support of this contention, defendants argue, first, that plaintiffs Magda and Kane Associates will be inadequate representatives of the class because, in addition to suing SNB on behalf of the class, they seek to sue derivatively on behalf of SNB, (1) SNB's former directors and accountants and (2) defendant Chemical Bank, on the basis of common law wrongs allegedly done by those defendants to the corporation.

In *Ruggiero v. American Bioculture, Inc.,* 56 F.R.D. 93 (S.D.N.Y.1972), relied upon by defendants, Judge Bauman found that because of the continuing "substantial equity interest" in the corporation possessed by two plaintiffs seeking to sue both derivatively on behalf of American Bioculture and as class representatives in an action against the corporation, their personal interest in prosecuting the class action claims might well conflict with their interests as stockholders of the corporation. In this case, however, it appears mechanical and unreal-

---

**3.** Defendants take the position, relying on *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562, 563 (2d Cir. 1968), that typicality and adequacy of representation are alternate ways of referring to the same considerations.

istic to speak of plaintiffs' substantial equity interest in SNB: the corporation has, according to the verified complaint, sold all its assets and the sales price has apparently been distributed to stockholders in a liquidating dividend. In these circumstances, plaintiffs' derivative claims appear designed to do no more than to fill the coffers of SNB so that any class action recovery may be meaningful. The facts, as plaintiffs allege them to be in their verified complaint, show both liability to SNB on the part of its accountants and directors and liability of SNB as well as those defendants to the class. Under these circumstances it would be fruitless to wait for a champion of the class who would not at least ally himself (as even plaintiff Ferber has done here) with a champion of the corporation, since it is only in such combination that the class action will go forward. The underlying facts, based on plaintiffs' showing on this motion, show no conflict, but indicate a common interest arising out of a common nucleus of facts. To deny the possibility of such community of interest on the basis of mechanical rules excluding any derivative plaintiff from every representing a class suing the corporation might well, as a practical matter, deny both the class and the corporation the right to vindicate wrongs done against them in situations such as that alleged in the verified complaint to exist here. As was said by Judge Frankel in *Heilbrunn v. Hanover Equities Corporation,* 259 F.Supp. 936, 939 (S.D.N.Y.1966), one must not let the "surface duality" blind one to the possibility that "the action has a basic goal which entails no real inconsistencies." And see, *Bertozze v. King Louis International,* 1976–1977 CCH Fed.Sec.L.Rep. ¶ 95,848 (D.R.I.1976). Should the facts, as they emerge, belie the view of the facts as presently alleged and conflicts in fact arise where common interests are presently perceived to exist, the Court can rely both on

its powers under Rule 23 and the presence of another plaintiff who does not sue derivatively and who has separate counsel to reexamine the maintainability of the class action by the derivative plaintiffs. See, *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619 (S.D.N.Y.1973).

■ A somewhat different situation exists with regard to the derivative claims asserted against Chemical Bank in Counts III and IV based on the allegedly unconscionable price at which SNB's assets were sold to Chemical. Here it is difficult to argue that the derivative claims arise from the same common nucleus of fact as that from which the class action claims arise so that proving that the corporation is owed money necessarily involves proof that it owes money to others. However, since plaintiffs Kane Associates and Magda have so clearly allied themselves in interest with the class in connection with their other claims, the concern caused by this situation is not for the adequate representation of the class but rather for the interest of other shareholders of SNB who may be entitled to a derivative representative who does not believe that all or most of what is owed to the corporation, the corporation owes to others. That, however, is not the issue now before the Court and, indeed, may never be before the Court since Chemical has moved to dismiss the derivative claims against it for lack of jurisdiction.[4] With regard to the issue which is now before the Court, namely the adequacy of Kane Associates and Magda as representatives of the class, the Court is persuaded that the effort to sue derivatively Chemical and the other derivative defendants is simply part of an effort entirely in the interest of the class not only to establish corporate liability but to provide a basis for collecting the debt believed owed to the class. Accordingly, the Court cannot find these plaintiffs inadequate representa-

---

4. Having expressed doubt about the adequacy of Kane Associates' and Magda's representation of other stockholders, it seems only fair to say once again what appears to be a conflict may simply be the facts of the case. If no other champion of SNB in battle with Chemical were to arise on the eve of the date the statute of limitations was to expire, Kane Associates and Magda might well argue that no stockholder who was not also a member of the class would sue Chemical because it was clear from the facts of the case that the ultimate beneficiary of such a suit could only be a class member.

tives simply on the ground that they have sued derivatively.

■ Defendants next allege an inadequacy in the representation of all three plaintiffs because one bought before, one after, and one both before and after the issuance of the qualified opinion of defendant Arthur Young, mentioned above. Although plaintiffs would, collectively at least, appear to cover all possible situations, defendants argue that each is an inadequate representative of the entire class. Essentially defendants argue that the class should be sub-divided, an argument rejected above. In all events, there appears no reason to find that the class is not adequately represented by these plaintiffs or any one of them simply by reason of the issuance of the Arthur Young letter, since the qualified opinion is in no way inconsistent with the overall scheme alleged and did not, on its face, make the objectives of the scheme impossible of realization. *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.1974); *Siegel v. Realty Equities Corporation*, 54 F.R.D. 420 (S.D.N.Y.1972); *Fischer v. Kletz*, 41 F.R.D. 377 (S.D.N.Y.1966).

Defendants next attack the adequacy of plaintiff Magda as a class representative apparently on the ground that his active interest in the financial performance of SNB, including his membership in a group of minority stockholders and personal calls and correspondence to SNB management, gave him somewhat more information concerning SNB's bad loans, in particular some allegedly bad loans acquired by SNB from Royal National Bank, and concerning SNB's prospects, in particular an interest expressed by other banks in acquiring SNB, than was possessed by other members of the class.

■ The standard for determining the adequacy of Magda's representation of the class is not whether his situation is in all respects identical with that of all other class members, but whether he may be expected to prosecute the class claims vigorously and whether any claim he has is antagonistic to the claims of the class. *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968). Nothing

in Magda's active interest in SNB's affairs prior to the commencement of this lawsuit suggests that he will be any less vigorous in pressing this lawsuit forward. The few pieces of information which Magda is said to have been able to glean as a result of this interest hardly amount to discovery of what plaintiffs allege was concealed, namely, an ongoing scheme continuing over a substantial period of time to conceal material information concerning SNB's loan portfolio with the effect of artificially inflating the price of SNB stock. It is plaintiff Magda's position that when he bought stock late in the class period he purchased without knowing that the stock was sold to him at a price inflated by concealment going back to the beginning of the class period. His claims, so far from being antagonistic to the claims of other class members, depend for their success on his establishing the entire course of misrepresentation. Accordingly, there is no basis for concluding that he is an inadequate representative of the class.

■ Defendants contend further that plaintiff Ferber is not an adequate class representative because he brings this action as trustee for two named beneficiaries. However, the Court is not persuaded that Mr. Ferber's personal obligations to his trust beneficiaries *per se* are antagonistic to the claims of the class. The fact that Mr. Ferber has had to take into account the interests of the beneficiaries prior to instituting this lawsuit is, as Judge Frankel has pointed out, no different than the situation faced by any litigant who must decide whether to sue individually or on behalf of a class. "Most litigants attempting class actions do so upon calculations of advantage—notably, in an effort to have others in the class help them defray the burdens of large litigations." *State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569 (S.D.N.Y.1976); and see *Markewich v. Adikes*, 76 F.R.D. 68 (E.D.N.Y. July 25, 1977); *Seiden v. Nicholson*, 69 F.R.D. 681 (N.D.Ill.1976). Having made the determination, presumably one within his power to make, that the trust beneficiaries would be

benefited by having Mr. Ferber proceed by class action, Ferber quite understandably rejected a proposal (if such it was) to settle the litigation by payment in full of the beneficiaries' claims, since no such settlement could expect to gain this Court's approval under Rule 23(e) any more than any other proposal by defendants to "buy out" the class representatives.

The issue whether Mr. Ferber's fiduciary duties prevent his obligating the trusts to pay the cost of the suit is not an issue in this case, cf. *In re Republic National Life Ins. Co.*, 74 Civ. 1115 (S.D.N.Y. December 31, 1975), since Mr. Ferber himself will pay the expenses of litigation. The suggestion that this fact makes Mr. Ferber an intermeddler or volunteer stirring up litigation so as to be guilty of champerty and maintenance, cf. *Norman v. ARCS Equities Corp.*, 72 F.R.D. 502 (S.D.N.Y.1976), ignores the fact that the trustee is the plaintiff in the suit and has himself not only the right but the obligation to pursue his beneficiaries' claims.

Defendants, recognizing apparently that it is the trustee who is the real party in interest, argue further that Ferber's specialized knowledge as a lawyer and certified public accountant make him an inadequate class representative since he is, like Magda, a more sophisticated investor than other class members. The argument might have more force if Ferber and Magda claimed that they were the victims of deception practiced on purchasers by means of one or another of defendants' allegedly false financial statements. But, as noted above, the claim is a broader one relating to an ongoing fraudulent scheme of broader dimensions as a result of which, it is alleged, both sophisticated and unsophisticated were deceived. There is, thus, no reason to believe that both Ferber and Magda will not prosecute that claim vigorously or that their claim is antagonistic to those of others of less sophistication who may have been injured as a result of other misrepresentations by defendants of more limited scope.

■ Finally, defendants argue that Kane Associates, Inc. is not an adequate class representative because Kane's purchase of a fractional share was *de minimus* and, in any event, different than the purchases of other class members because it was motivated, at least in part, by a desire to "round out" Kane Associates' holdings of SNB stock. However, there is no rule that the small size of a class representative's claim disqualifies him *per se, Feder v. Harrington*, 52 F.R.D. 178 (S.D.N.Y.1970). Nor does the existence of other factors motivating the Kane stock purchases negate the existence of a desire, presumably shared by Kane Associates with other members of the class, to make a further investment in SNB stock based on a belief that the investment was a good one.

The assertion by plaintiffs that they meet the numerosity requirement of Rule 23(a), since the class will include several thousand members, is not disputed. Nor is it disputed that plaintiff's counsel are qualified, experienced and generally able to conduct the proposed litigation. Accordingly, the Court finds that the prerequisites to maintaining a class action are met.

■ Since, as noted above, the Court finds that questions of law and fact common to the members of the class predominate over questions affecting only individual members, and since it is not disputed that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, the Court also finds that the action may be maintained as a class action.

Within thirty (30) days of the filing of this Order, plaintiffs shall serve on defendants and file with the Court a proposed form of Notice to the class, together with supporting affidavits on the basis of which the Court may determine the best notice practicable under the circumstances; defendants shall have fourteen (14) days to submit any papers in opposition, and the Court will hear argument, if necessary, on the form of notice and means of giving notice on February 13, 1978.

IT IS SO ORDERED.